477 F.3d 535
 In re MONOSODIUM GLUTAMATE ANTITRUST LITIGATION.
Inquivosa SA; Petbowe Chemtrade Corporation; Plus Sun Company, Ltd.; MCC Menssing Chemiehandel & Consultants GMBH; Newco Trading Company, on behalf of themselves and all others similarly situated, Plaintiffs/Appellants,
v.
Ajinomoto Company, Inc.; Ajinomoto USA, Inc.; Orsan S.A.; Cheil Jedang Corporation; C.J. America, Inc., Defendants/Appellees,
Miwon Company, Ltd.; Daesang America, Inc., Defendants,
Takeda Chemical Industries, Ltd.; Kyowa Hakko Kogyo Company, Ltd.; Vedan Enterprises Group, formerly known as Tung Hai Fermentation Industrial Corporation, Defendants/Appellees,
Ajinomoto Europe, Defendant.
Government of Japan, Amicus on Behalf of Appellee.
 No. 05-4303.
 No. 05-4307.
 United States Court of Appeals, Eighth Circuit.
 Submitted: December 11, 2006.
 Filed: February 8, 2007.
 
 Richard A. Lockridge, argued, Minneapolis, MN (Heidi M. Silton, Samuel D. Heins and Susan E. MacMenamin, Minneapolis, MN, on the brief, Michael D. Hausfeld and Brian A. Ratner, Washington, DC, on the brief), for appellant.
 Ruth E. Harlow, argued, New York, NY (Lawrence Byrne, Lance Croffoot-Suede, Martin S. Bloor, A. Paul Victor, James F. Lerner, and Christopher V. Roberts, New York, NY, on the brief, Joseph T. Dixon, Jr., Scott A. Neilson, William L. Greene, Skip Dorocher, Eric A. Ruzicka, and Michael A. Lindsay, Minneapolis, MN, on the brief, Barry F. McNeil, Ronald W. Breaux, and Jacqueline K. Shipchandler, Dallas, TX, on the brief, Michael R. Lazerwitz and Steven J. Kaiser, Washington, DC, on the brief), for appellee.
 Before WOLLMAN, BEAM, and RILEY, Circuit Judges.
 WOLLMAN, Circuit Judge.
 
 
 1
 Appellants appeal from the district court's[1] dismissal of their complaint for lack of subject matter jurisdiction. We affirm.
 
 I.
 
 2
 The appellants are foreign corporations that purchased monosodium glutamate (MSG) and nucleotides from the appellees in transactions that occurred outside the United States. They contend that the appellees participated in a global price-fixing and market allocation scheme to increase the worldwide price of MSG and nucleotides. This scheme allegedly involved fixing the price and controlling the market share of MSG and nucleotides both inside and outside the United States. The appellants assert that the United States market was included within the scheme because the fungible nature and worldwide flow of these products made the domestic and foreign markets interconnected, such that super-competitive prices abroad could be sustained only by maintaining super-competitive prices in the United States.
 
 
 3
 The appellants' action asserted that the appellees' involvement in the global conspiracy constituted a violation of the Sherman Act, 15 U.S.C. § 1. The appellants do not assert that they purchased or attempted to purchase MSG or nucleotides in the United States market. Rather, they allege that they purchased overpriced MSG and nucleotides abroad because the appellees' inclusion of the United States market in the conspiracy prevented them from buying competitively priced MSG and nucleotides either directly from the United States or from arbitrageurs selling MSG or nucleotides imported from the United States.
 
 
 4
 Shortly after the commencement of this action, the parties agreed to stay the proceedings pending a decision by the United States Supreme Court in F. Hoffmann-La Roche Ltd. v. Empagran S.A., 542 U.S. 155, 124 S.Ct. 2359, 159 L.Ed.2d 226 (2004) (Empagran I), a factually similar antitrust case brought by foreign and domestic purchasers of vitamins. Following the Empagran I decision, which addressed the applicability of the Sherman Act under the Foreign Trade Antitrust Improvements Act of 1982 (FTAIA), the appellees moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim, alleging that the FTAIA precluded the claim from being brought under the Sherman Act. The district court denied the appellees' motion. D. Ct. Order of May 2, 2005, at 14. Following the D.C. Circuit's decision in Empagran S.A. v. F. Hoffmann-LaRoche, Ltd., 417 F.3d 1267 (D.C.Cir.2005), cert. denied, ___ U.S. ___, 126 S.Ct. 1043, 163 L.Ed.2d 857 (2006) (Empagran II), the appellees filed a motion for reconsideration of the district court's order denying their motion to dismiss. The district court, relying on Empagran II, granted the motion and dismissed the complaint with prejudice, holding that the appellants had not stated a claim under the Sherman Act because they had not shown that the domestic effect of the global price-fixing cartel proximately caused their injuries. D. Ct. Order of Oct. 26, 2005, at 6-7.
 
 II.
 
 5
 We review a district court's dismissal for lack of subject matter jurisdiction de novo. V S Ltd. P'ship v. Dep't of Housing and Urban Dev., 235 F.3d 1109, 1112 (8th Cir.2000).
 
 
 6
 "The Foreign Trade Antitrust Improvements Act of 1982 (FTAIA) excludes from the Sherman Act's reach much anticompetitive conduct that causes only foreign injury. It does so by setting forth a general rule stating that the Sherman Act `shall not apply to conduct involving trade or commerce . . . with foreign nations.'" Empagran I, 542 U.S. at 158, 124 S.Ct. 2359 (ellipsis in original) (quoting 15 U.S.C. § 6a). The FTAIA then creates a limited exception to this rule, making the Sherman Act applicable if the foreign conduct "(1) has a `direct, substantial, and reasonably foreseeable effect' on domestic commerce, and (2) `such effect gives rise to a [Sherman Act] claim.'" Id. at 159, 124 S.Ct. 2359 (quoting 15 U.S.C. § 6a).[2]
 
 
 7
 In dismissing the appellants' action, the district court concluded that 1) the FTAIA's statutory language "gives rise to" requires that the appellants show that the domestic effects of the anticompetitive conduct were the direct or proximate cause of their claim, 2) the appellants' claim failed to satisfy this causation standard, and 3) the appellants therefore failed to state a claim under the Sherman Act. D. Ct. Order of Oct. 26, 2005, at 4-7. On appeal, the appellants contend that under the FTAIA's exception a showing of causation less than that of proximate cause is sufficient and that their claim meets this lesser standard. The appellants alternatively contend that their claim satisfies even the proximate cause standard.
 
 
 8
 In Empagran I, the United States Supreme Court concluded that the causal link between the domestic effect of the anticompetitive conduct and the foreign injury is not satisfied when the foreign injury is independent of the domestic effect. Empagran I, 542 U.S. at 164, 124 S.Ct. 2359. The Court thereafter remanded the case to the D.C. Circuit to determine whether the causal link is satisfied when the foreign injury is linked to, and not independent of, domestic effects. Id. at 175, 124 S.Ct. 2359. On remand, the D.C. Circuit concluded that the statutory "gives rise to" language requires a direct or proximate causal relationship, rather than a lesser "but for" relationship. Empagran II, 417 F.3d at 1271. The court then determined that under the plaintiffs' theory, namely, that the domestic effects of the anticompetitive conduct gave rise to their foreign injury because the defendants could not have maintained their global price-fixing arrangement without fixing the prices in the United States, the domestic effects of the conspiracy were only a "but for" cause of the plaintiffs' injuries and the FTAIA exception and Sherman Act were therefore inapplicable. Id. at 1270-71.
 
 
 9
 The appellants contend that we should part ways with the D.C. Circuit and apply a less direct causation standard under the FTAIA's exception. We disagree. The principles of prescriptive comity require us to respect the sovereign authority of foreign nations and to construe ambiguous statutory language in a way that avoids unreasonable interference with such authority. Empagran I, 542 U.S. at 164, 124 S.Ct. 2359; Empagran II, 417 F.3d at 1271. "America's antitrust laws, when applied to foreign conduct, can interfere with a foreign nation's ability independently to regulate its own commercial affairs." Empagran I, 542 U.S. at 165, 124 S.Ct. 2359. Although it may be reasonable to apply our antitrust laws to foreign conduct in certain situations, id., permitting a standard that is less direct than proximate cause here would unreasonably "interfere[ ] with other nations' prerogative to safeguard their own citizens from anti-competitive activity within their own borders" and violate these comity considerations. Empagran II, 417 F.3d at 1271. We therefore conclude, as did the court in Empagran II, that the statutory "gives rise to" language requires a direct or proximate causal relationship and that this standard is in accord with the principles of prescriptive comity. We believe that this standard is also consistent with general antitrust principles, which typically require a more direct causation standard. See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 533-35, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) ("`Congress did not intend to allow every person tangentially affected by an antitrust violation to maintain an action to recover ....'" (quoting Blue Shield of Va. v. McCready, 457 U.S. 465, 477, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982))); Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 267-69, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) ("[A] plaintiff's right to sue under § 4 [of the Clayton Act] required a showing that the defendant's violation not only was a `but for' cause of his injury, but was the proximate cause as well."); Latino Quimica-Amtex S.A. v. Akzo Nobel Chemicals B.V., No. 03 Civ. 10312(HBDF), 2005 WL 2207017, at *8 (S.D.N.Y. Sept.8, 2005) ("[T]he proximate causation standard ... is consistent with antitrust principles requiring that an antitrust injury-in-fact be caused directly by a defendant's conduct.").
 
 
 10
 Further, the Supreme Court has held that "the FTAIA's language and history suggest that Congress designed the FTAIA to clarify, perhaps to limit, but not to expand in any significant way, the Sherman Act's scope as applied to foreign commerce." Empagran I, 542 U.S. at 169, 124 S.Ct. 2359. Despite the appellants' contention to the contrary, there appear to be no cases prior to the FTAIA's enactment that would have supported the application of the Sherman Act based on the indirect causation alleged in the case at hand.[3] Accordingly, to adopt a causation standard less than that of proximate cause would effectively expand the Sherman Act's scope beyond that contemplated by the FTAIA.
 
 
 11
 We turn, then, to whether the claim proffered by the appellants meets the proximate cause standard. The appellants' causation theory is identical to that presented in Empagran II. Empagran II, 417 F.3d at 1270. They allege that because MSG and nucleotides are fungible and marketed worldwide, the appellees were required to maintain super-competitive prices in the United States in order to sustain super-competitive prices abroad. In the absence of super-competitive domestic pricing, the appellants assert that they would have been able to purchase MSG or nucleotides at lower prices either directly from the United States or from arbitrageurs selling MSG or nucleotides imported from the United States. The appellants therefore contend that the super-competitive pricing in the United States gave rise to the foreign super-competitive prices paid by the appellants.
 
 
 12
 As did the court in Empagran II, we conclude that the theory advanced by the appellants does not satisfy the proximate cause standard. The domestic effects of the price fixing scheme (increased U.S. prices) were not the direct cause of the appellants' injuries. Rather, it was the foreign effects of the price fixing scheme (increased prices abroad). Although United States prices may have been a necessary part of the appellees' plan, they were not significant enough to constitute the direct cause of the appellants' injuries, as they constituted merely one link in the causal chain. The theory proffered by the appellants therefore establishes at best only an indirect connection between the domestic prices and the prices paid by the appellants. While such an indirect connection may be enough to satisfy a "but for" causation standard, it is too remote to satisfy the proximate cause standard.
 
 
 13
 The appellants' argument regarding the importance of enforcing the Sherman Act's deterrence goal, although not without force, is unavailing in light of the dictates of the FTAIA and the considerations of comity as discussed above. See Empagran I, 542 U.S. at 174-75, 124 S.Ct. 2359.
 
 
 14
 The judgment is affirmed.
 
 
 
 Notes:
 
 
 [1]
 The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota
 
 
 [2]
 The FTAIA provides in full:
 Sections 1 to 7 of this title shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless —
 (1) such conduct has a direct, substantial, and reasonably foreseeable effect —
 (A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or
 (B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and
 (2) such effect gives rise to a claim under the provisions of sections 1 to 7 of this title, other than this section.
 If sections 1 to 7 of this title apply to such conduct only because of the operation of paragraph (1)(B), then sections 1 to 7 of this title shall apply to such conduct only for injury to export business in the United States.
 15 U.S.C. § 6a (1997).
 
 
 [3]
 The appellants contend that two pre-FTAIA cases support applying a less direct causation standard:Pfizer, Inc. v. Gov't of India, 434 U.S. 308, 98 S.Ct. 584, 54 L.Ed.2d 563 (1978) and Industria Siciliana Asfalti v. Exxon Research and Eng'g Co., No. 75 Civ. 5828-CSH, 1977 WL 1353 (S.D.N.Y. Jan.18, 1977). We disagree. In Pfizer, the court addressed only the narrow issue of whether a foreign nation could be considered a "person" under the antitrust laws. Pfizer, 434 U.S. at 320, 98 S.Ct. 584. The court did not address the causal relationship between the domestic effect and the foreign injury. Empagran II, 417 F.3d at 1270. In Industria, a foreign plaintiff purchased engineering services from a domestic firm that had engaged in anticompetitive behavior in violation of the Sherman Act. Industria, 1977 WL 1353 at *1-3. The domestic effect in Industria (diminished domestic competition) was therefore a more direct cause of the plaintiff's injury (higher prices paid for the domestic services).